**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| YIWU LANGXUN ELECTRONIC COMMERCE CO., LTD., | Case No. 4:25-cv-11509-FKB-CI |
| Plaintiff, | Hon. F. Kay Behm<br>Mag. Curtis Ivy, Jr. |
| v. | |
| THE CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A, | |
| Defendants. | |

**OPINION AND ORDER DENYING CERTAIN DEFENDANTS'
MOTIONS TO DISMISS (ECF Nos. 22, 29, 31, 76, 81)**

This is a patent infringement case in which Plaintiff Yiwu Langxun Electronic Commerce Co., Ltd. ("Yiwu") alleges that the Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations identified in Schedule A to the Complaint (collectively, "Defendants") infringe a Yiwu design patent on a "Balloon Frame," U.S. Patent No. D976,752 (the "D'752 Patent").

Presently before the Court are five Motions to Dismiss, in which a total of nine Defendants ask the Court to dismiss the Complaint against them on a variety of grounds. ECF Nos. 22, 29, 31, 76, 81. The five Motions to Dismiss were respectively

1

filed by four sets of two Defendants and one individual Defendant as follows: (i) putianshishunqinmaoyiyouxiangongsi d/b/a Fomcet (Schedule A Def. No. 30) ("Fomcet") and putianshilejiedianzishangwuyouxiangongsi d/b/a Pustros-US (Schedule A Def. No. 44) ("Pustros-US") (ECF No. 22); (ii) Ningbo Changhao Trading Co., Ltd. d/b/a LINCAT (Schedule A Def. No. 2) ("LINCAT") and changzhouchimeizhanshiqicaizhizaoyouxiangongsi d/b/a ChiMei (Schedule A Def. No. 5) ("ChiMei") (ECF No. 29); (iii) huangxiangyin d/b/a HAWJER (Schedule A Def. No. 45) ("HAWJER") (ECF No. 31); (iv) Yongkang PuNuan Industry & Trade Co., Ltd. d/b/a HEOMU or HOEMU Factory Store (Schedule A Def. No. 1) ("HEOMU") and SHENZHENSHIZHONGHUIXINJIADIANKEJIYOUXIANGONGSI d/b/a EGU-KING (Schedule A Def. No. 13) ("EGU-KING") (ECF No. 76); and (v) FOSHANSHIFANDAJIAJUSHIYEYOUXIANGONGSI d/b/a Vanda FDT (Schedule A Def. No. 7) ("Vanda FDT") and SHENZHENSHI NAMUCUO DIANZIKEJIYOUXIANGONGSI d/b/a QSN Namtso (Schedule A Def. No. 11) ("QSN Namtso") (ECF No. 81) (all of them, collectively, "Moving Defendants"). The parties have submitted written briefs explaining their positions on whether

dismissal is appropriate.[1] Pursuant to Local Rule 7.1(f)(2), the Court will decide Moving Defendants' Motions to Dismiss without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons stated in this Opinion and Order, the Court **DENIES** Moving Defendants' Motions to Dismiss.

## I.      PROCEDURAL HISTORY

The D'752 Patent, titled "Balloon Frame," was issued by the United States Patent and Trademark Office (the "USPTO") on January 31, 2023. On May 22, 2025, Yiwu filed a Complaint for design patent infringement against all Defendants identified in Schedule A, alleging that Defendants infringe the D'752 Patent in connection with online sales of deceptively similar versions of Yiwu balloon frames covered by the D'752 Patent. ECF Nos. 1, 5. Instead of answering the Complaint, Moving Defendants filed their present Motions to Dismiss, asking the Court to dismiss the Complaint on a variety of grounds, including, *inter alia*, for failure to state a claim of infringement of a valid patent, for lack of personal jurisdiction, and for misjoinder. ECF Nos. 22, 29, 31, 76, 81.

---

[1] In the Complaint, Yiwu sets forth the same allegations against all Defendants identified in Schedule A. With some exceptions that the Court will address separately when necessary, the grounds for dismissal, requests for other relief, and arguments of the parties are generally the same for all Motions to Dismiss. For ease of reference, the Court will default to citing to the set of written briefs (i.e., motion, response, and reply briefs) for the most recently filed motion, which was the Motion to Dismiss filed by Defendants Vanda FDT (Schedule A Def. No. 7) and QSN Namtso (Schedule A Def. No. 11) at ECF No. 81. *See* ECF Nos. 81, 83, 84.

## II.    BACKGROUND

The D'752 Patent is directed to a "Balloon Frame," referring to a large, upright backdrop stand that users can decorate with balloons, flowers, or other decorations to serve as a backdrop for photography or events.

### A.    D'752 Patent

The D'752 Patent covers the design for a balloon frame that includes a frame for supporting decorations (e.g., balloons) and legs for supporting the frame on the ground. As shown in Figures 1 and 2 of the D'752 Patent, reproduced below, the patented design involves a circular frame (i.e., a frame with a circular shape) and a pair of spaced apart, inverted (i.e., upside-down) T-shaped legs.

       

*Figure 1 of the D'752 Patent*          *Figure 2 of the D'752 Patent*

4

## B.      Infringement Allegations

In the Complaint, Yiwu asserts a claim of design patent infringement under 35 U.S.C. § 271 against all Defendants identified in Schedule A. ECF No. 1. As identified in Schedule A, Defendants comprise dozens of China-based companies who Yiwu alleges acted in concert to sell deceptively similar versions of Yiwu balloon frames covered by the D'752 Patent in the United States through Amazon.com (the "accused products"). ECF No. 5.

In the written briefs, the parties have presented various comparisons between the patented design and the accused products using excerpts from Schedule A, where Yiwu provides images of the accused products from their Amazon listings. *Id.* As an illustrative example, the Court has prepared the below side-by-side comparison between Figure 1 of the D'752 Patent, reproduced below at left, and the image of an example accused product, reproduced below at right.[2] As shown, the accused products use (at least) the same circular frame as the balloon frame shown in the D'752 Patent, and are often depicted with decorations (e.g., floral clusters) on the frames to show how they can be decorated.

---

[2] The example accused product is sold by Defendant QSN Namtso (Schedule A Def. No. 11). *Id.*, PageID.59.



*Figure 1 of the D'752 Patent*          *Example Accused Product*

### C.      Motions to Dismiss

In their Motions to Dismiss, Moving Defendants ask the Court to (1) dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim of infringement of a valid patent because: (a) the D'752 Patent is invalid for functionality (i.e., lack of ornamentality) under 35 U.S.C. § 171; (b) the D'752 Patent is invalid as obvious under 35 U.S.C. § 103; and (c) Yiwu has not plausibly alleged infringement under the ordinary observer test. Moreover, Moving Defendants ask the Court to (2) dismiss the Complaint under Federal Rule of Civil Procedure 8(a) for failure to give fair notice. Furthermore, Moving Defendants ask the Court to (3) dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. With respect to this ground for dismissal, in opposition, Yiwu argues that the jurisdictional allegations it has set forth in the

Complaint are sufficient. However, in the event the Court finds otherwise, Yiwu urges against dismissal, and asks the Court to instead allow jurisdictional discovery in aid of resolving the issue of personal jurisdiction. Finally, certain Moving Defendants additionally ask the Court to: (4) dismiss the Complaint for misjoinder in violation of 35 U.S.C. § 299; or (5) alternatively sever them from this case under Federal Rule of Civil Procedure 21 to avoid prejudice and judicial inefficiencies.

### III.  LEGAL STANDARDS

Under the Patent Act, a patent grants the patentee the right to exclude others from practicing the patented invention. 35 U.S.C. § 154(a)(1). Thus, Section 271(a) of the Patent Act, the provision on direct infringement, provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." *Id.* § 271(a). *See also id.* § 271(b)-(c) (codifying theories of liability for induced infringement and contributory infringement).

In accordance with the jurisprudence of the Court of Appeals for the Federal Circuit, district courts adjudicating patent cases apply the law of the Federal Circuit to questions pertaining to patent law and the law of the regional circuit, here, the Court of Appeals for the Sixth Circuit, to procedural questions. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). Whether to grant or deny a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is generally a procedural question governed by the law of the regional circuit. *Id.* However, the Federal Circuit applies its own law to questions intimately related to substantive patent law; for instance, Federal Circuit law applies to "the specific question of whether a complaint states a claim of patent infringement on which relief may be granted." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024).

### A.    Pleading

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to make such a showing may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When deciding a motion to dismiss under Rule 12(b)(6), a district court must accept all of the factual allegations contained in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Beyond the plaintiff's complaint and any exhibits attached thereto, a district court may consider public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss so long as the documents are "referred to" in the complaint and "central to" the claims. *Bassett v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

In order to survive a Rule 12(b)(6) motion, a complaint need only contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## B.    Design Patent Infringement

Section 171 of the Patent Act provides that a design patent may be obtained for "any new, original and ornamental design for an article of manufacture." 35

U.S.C. § 171(a). As opposed to the detailed written description and claims in the specification of a utility patent, a design patent is claimed according to its drawing figures. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302-03 (Fed. Cir. 2010). "No description of the design in the specification beyond a brief description of the drawing is generally necessary, since as a rule the illustration in the drawing views is its own best description." Manual of Patent Examining Procedure § 1503.01.

For a design patent, the Federal Circuit has instructed that an infringement analysis involves two steps: (1) the court, when appropriate, construes the claim to the design; and (2) the factfinder compares the properly construed claim to the design of the accused product. *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020). "A design patent only protects the novel, ornamental features of the patented design." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). "Thus it is the non-functional, design aspects that are pertinent to determinations of infringement." *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988). Accordingly, it may be helpful to the factfinder for the court to construe the claim to "distinguish[] between those features of the claimed design that are ornamental and those that are purely functional." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (*en banc*).

To compare the patented design to the accused product at the second step of the infringement analysis, the factfinder applies the "ordinary observer" test. Under

10

the ordinary observer test, "if, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). As instructed by the Federal Circuit, the ordinary observer test asks whether an ordinary observer, familiar with prior art designs, would be deceived into believing that the accused product is the same as the patented design. *Egyptian Goddess*, 543 F.3d at 672. "The ordinary observer test applies to the patented design in its entirety, as it is claimed." *Crocs*, 598 F.3d at 1303. "Minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Id.* (quotation and alteration omitted).

## C.   Invalidity Defenses

The Patent Act establishes invalidity as a defense to infringement. 35 U.S.C. § 282(b). Under an invalidity defense, an accused infringer "may attempt to prove that the patent never should have issued in the first place." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 96 (2011). A patent enjoys a statutory presumption of validity, and the party asserting invalidity must prove invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft*, 564 U.S. at 95.

"A design patent is directed to the appearance of an article of manufacture." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

11

Under Section 171 of the Patent Act, "a design patent may be granted only for a 'new, original and ornamental design.'" *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986) (quoting 35 U.S.C. § 171(a)). "If the patented design is primarily functional rather than ornamental, the patent is invalid." *Id.* "An article of manufacture necessarily serves a utilitarian purpose, and the design of a useful article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article." *L.A. Gear*, 988 F.2d at 1123 (quotation omitted). "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Id.*

Invalidity of a patent is also proven when it is shown that any "condition for patentability" was lacking at the time the patent issued. 35 U.S.C. § 282(b)(2). As a condition for patentability, the Patent Act requires that the claimed invention be novel under Section 102 and nonobvious under Section 103. Under Section 102, a patent is invalid as anticipated (i.e., lacking novelty) when the patented invention is identically disclosed or described in a patent, a published patent application, or a printed publication. *Id.* § 102(a)(1)-(2). Under Section 103, a patent whose patented invention is not identically disclosed or described under Section 102 is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective

12

filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." *Id.* § 103.

## IV. ANALYSIS

As set forth above, in their Motions to Dismiss, Moving Defendants ask the Court to dismiss the Complaint on a variety of grounds, including, *inter alia*, for failure to state a claim of infringement of a valid patent, for lack of personal jurisdiction, and for misjoinder. For the reasons set forth below, the Court finds that Moving Defendants are not entitled to dismissal of the Complaint.

### A. Infringement of a Valid Patent

In their Motions to Dismiss, Moving Defendants ask the Court to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim of infringement of a valid patent. Moving Defendants move to dismiss the Complaint on three grounds, the first two directed to validity and the third directed to infringement. First, Moving Defendants argue that dismissal is appropriate because the D'752 Patent is invalid for functionality (i.e., lack of ornamentality) under 35 U.S.C. § 171. Second, Moving Defendants argue that dismissal is appropriate because the D'752 Patent is invalid as obvious under 35 U.S.C. § 103. Third, Moving Defendants argue that dismissal is appropriate because Yiwu has not plausibly alleged infringement under the ordinary observer test.

13

### 1.    Validity

In the Complaint, Yiwu alleges that the D'752 Patent is "valid and enforceable." ECF No. 1, PageID.6 (Compl. ¶ 22). Moving Defendants acknowledge that the D'752 Patent enjoys a statutory presumption of validity, and that a patentee can normally rest on the presumption of validity at the pleadings stage. However, Moving Defendants argue that this is a case where the presumption of validity does not preclude early dismissal. According to Moving Defendants, the D'752 Patent is facially invalid, and the Complaint therefore does not state a plausible claim of validity, because the undisputed facts demonstrate functionality and obviousness.

### a) Functionality

Moving Defendants argue that the D'752 Patent is invalid for functionality (i.e., lack of ornamentality) because the patented design covers functional (i.e., non-ornamental) features. As to the allegedly functional features, Moving Defendants point to the frame shape. Moving Defendants argue that the patented design is primarily functional because the circular frame dominates the overall appearance, and the circular shape is driven by the utilitarian purpose of the frame. For example, Moving Defendants explain that the circular shape ensures structural integrity, load distribution, and stability for supporting decorations, allows uniform spacing to optimize material efficiency and aesthetic balance, and provides compatibility with other backdrop stands (e.g., existing floral/balloon arches).

14

In opposition, Yiwu argues that Moving Defendants have not met their burden of proving that the D'752 Patent is invalid, first, because the patented design is presumptively non-functional, and second, because the existence of alternative designs weighs against functionality. Yiwu agrees that the overall appearance of the patented design is dominated by the circular frame. And similar to Moving Defendants, Yiwu explains that the function of the frame is to provide structural support for balloons. However, to illustrate that the selection of the circular shape was an ornamental design choice, Yiwu points to the existence of alternative designs. Using the example of a square, Yiwu explains that any frame shape could provide the same structural support. In connection with the presumption of ornamentality, Yiwu argues that the existence of alternative designs that can perform the same function is an important factor weighing against a contrary finding of functionality. Yiwu also points out that, in any event, design patents often cover a combination of functional features and ornamental features, and the presence of a functional feature does not compel a finding of functionality.

Having considered the arguments of the parties in light of the current record, the Court finds that the issue of functionality is more properly resolved on a developed record at later stages of this case. Moving Defendants have the burden of proving by clear and convincing evidence that the patented design as a whole is primarily functional. In the balloon frame shown in the figures of the D'752 Patent,

15

the patented design, while relatively basic, nonetheless presents multiple features that the Court would have expected Moving Defendants to discuss. For instance, in addition to features of the frame (e.g., the circular shape and the thickness) and the legs (e.g., the inverted T shapes), the patented design involves features of the combination of the legs with the frame, including the relative proportions between the frame and the legs (e.g., the large circular shape and the small inverted T shapes), and the position and orientation of the legs in relation to the frame (e.g., the spacing and the inward tilt toward the frame from the ground).

In formulating their functionality theory around the frame shape, Moving Defendants focus on only a single feature of only a single element. Assuming, *arguendo*, that the circular shape is driven to some degree by the utilitarian purpose of the frame, it does not necessarily follow that the patented design is primarily functional. "In determining whether a design is primarily functional or primarily ornamental the claimed design is viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article." *L.A. Gear*, 988 F.2d at 1123. Here, giving due regard to the presumption of validity, the Court finds that the patented design involves features besides a circular shape in the abstract that merit discussion to inform a proper functionality analysis. Likewise, in the absence of such discussion,

16

the Court finds that the patented design involves additional features that plausibly contribute to the ornamentality of the patented design as a whole.

For the same reasons that the issue of functionality is more properly resolved on a developed record, Moving Defendants have not met their burden of proving functionality by clear and convincing evidence at the pleadings stage. Accordingly, the Court will **DENY** Moving Defendants' Motions to Dismiss as to their request to dismiss the Complaint for failure to state a claim on the ground that the D'752 Patent is invalid for functionality (i.e., lack of ornamentality).

### b) Obviousness

Moving Defendants argue that the D'752 Patent is invalid as obvious because the patented design covers an obvious combination of known elements. In particular, Moving Defendants argue that obviousness is apparent from prior art wreaths. In addition to inexplicably asserting that the D'752 Patent covers the design for a wreath, Moving Defendants more correctly explain that the patented design involves a circular frame intended to support evenly spaced decorations. In support of their obviousness theory, Moving Defendants point to Victorian-era wreaths to demonstrate that circular frames with evenly spaced floral elements are a centuries-old convention in the field of wreath making. In addition to wreaths, Moving Defendants assert that other backdrop stands (e.g., existing floral/balloon arches) provide further examples of decorative products with circular frames. In light of the

purported prior art, Moving Defendants argue that the patented design would have been obvious to a floral designer as the predictable result of combining known circular frames with standard floral spacing.

In opposition, Yiwu argues that Moving Defendants have not met their burden of proving that the D'752 Patent is invalid. With respect to the purported prior art, Yiwu points out that the patented design is presumptively novel and nonobvious, and that this case does not involve wreaths or floral design. Yiwu both challenges the relevance of prior art wreaths, and objects to any consideration of matters outside the pleadings in the first place. Yiwu argues that it is entitled to rest on the presumption of validity at the pleadings stage, especially given that Moving Defendants have failed to present a well-supported obviousness theory.

As with the issue of functionality, the Court finds that the issue of obviousness is more properly resolved on a developed record at later stages of this case. At the pleadings stage, an obviousness determination is improper for at least two reasons. First, despite asserting a prior art invalidity defense requiring clear and convincing evidence, Moving Defendants do not cite any actual prior art references. The purported prior art is not in the record, much less part of the Complaint, as required for consideration on a motion to dismiss. Although Moving Defendants, for the first time in their reply briefs, make passing references to judicial notice, the Court declines to adopt their attorney argument descriptions of known circular frames as

18

undisputed facts. The Court, for instance, is skeptical that Victorian-era wreaths and the patented design for a balloon frame use identical looking circular frames. Second, given the absence of actual prior art references, it is not apparent that the known circular frames upon which Moving Defendants base their obviousness theory are relevant evidence of invalidity. As Yiwu points out, this case involves balloon frames, not wreaths or floral design. As well, Moving Defendants point to circular shapes in the abstract, without regard to other potentially distinguishing features of the frames. A side-by-side comparison between the prior art and the patented design could be just as likely to highlight patentable differences than to reveal invalidating similarities in overall appearance.

For the same reasons that the issue of obviousness is more properly resolved on a developed record, Moving Defendants have not met their burden of proving obviousness by clear and convincing evidence at the pleadings stage. "Evidence of invalidity *must be clear* as well as convincing." *Schumer v. Lab'y Comput. Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) (emphasis added). "Indeed," the Federal Circuit has instructed, "to accept confusing or generalized testimony as evidence of invalidity is improper." *Id.* at 1316 (vacating district court's grant of summary judgment of invalidity for improper reliance on conclusory expert testimony comparing claim language to prior art reference). Accordingly, the Court will **DENY**

19

Moving Defendants' Motions to Dismiss as to their request to dismiss the Complaint for failure to state a claim on the ground that the D'752 Patent is invalid as obvious.

### 2.      Infringement

In the Complaint, Yiwu sets forth the same infringement allegations against all Defendants, alleging that Defendants infringe the D'752 Patent because, "as shown" in Schedule A, an ordinary observer would find the accused products "at least substantially similar" to the patented design. ECF No. 1, PageID.4, 6 (Compl. ¶¶ 9, 24). Thus, in support of its infringement allegations, Yiwu points to Schedule A, where Yiwu provides images of the accused products from their Amazon listings for comparison with the patented design shown in the figures of the D'752 Patent. ECF No. 5. Likewise, in the written briefs, the parties have presented various comparisons between the at-issue designs using excerpts from Schedule A. Yiwu argues that it is "evident" from such comparisons that the accused products have "identical" circular frames and, with the exception of certain accused products, addressed separately below, "identical" inverted T-shaped legs as the balloon frame of the D'752 Patent. ECF No. 83, PageID.477.

Moving Defendants, on the other hand, argue that Yiwu has not plausibly alleged infringement. Moving Defendants agree that the accused products use the same circular frame as the patented design. And although certain Moving Defendants explain that their accused products instead have L-shaped legs, all other

Moving Defendants do not dispute that their accused products use the same inverted T-shaped legs as the patented design. Despite the similarities between the patented design and the accused products, Moving Defendants argue that the accused products do not infringe the D'752 Patent under the ordinary observer test for two reasons.

First, certain Moving Defendants point out that their accused products have a different leg shape than the patented design.[3] As shown in their comparison, reproduced below, Moving Defendants explain that the accused products have L-shaped legs, not inverted T-shaped legs, as in the balloon frame of the D'752 Patent. ECF No. 22, PageID.250. As to their non-infringement theory, Moving Defendants argue that "an upside-down 'T' for the stand … is the only ornamental element of the design." *Id.*, PageID.249. As best understood by the Court, Moving Defendants rely on their functionality theory to argue that, in the infringement analysis for the D'752 Patent, the circular frame should be disregarded as non-ornamental. Likewise, Moving Defendants appear to argue that a proper comparison between the at-issue designs would be focused on only the leg shapes, and that the different leg shapes preclude a finding of infringement.

---

[3] This particular challenge to Yiwu's infringement allegations is raised by Defendants Fomcet (Schedule A Def. No. 30) and Pustros-US (Schedule A Def. No. 44), whose Motion to Dismiss was filed at ECF No. 22.



Figure 1: Comparison

Second, all Moving Defendants assert that their accused products are "complete floral arches" that create an overwhelmingly different visual impression than the patented design. ECF No. 81, PageID.437. In support of their non-infringement theory, Moving Defendants explain that the D'752 Patent covers the design for a balloon frame whose frame is intended to support decorations (e.g., balloons). With respect to the patented design, Moving Defendants argue that the overall appearance is dominated by the bare, minimalist ring structure of the circular frame. According to Moving Defendants, the accused products, by contrast, are complete, heavily-ornamented floral arches whose frames are densely covered by

floral elements. With respect to the accused products, Moving Defendants argue that the circular frames are obscured and incidental. Rather than the circular shapes, Moving Defendants argue that the overall appearance is dominated by features of the floral elements (e.g., flowers, foliage, textures, color tones, etc.) on the frames. Moving Defendants argue that the added floral elements preclude a finding of infringement because an ordinary observer familiar with known circular frames would not confuse a complete floral arch with a bare ring structure.

In opposition, Yiwu argues that it has plausibly alleged infringement because the accused products "easily" infringe the D'752 Patent under the ordinary observer test. ECF No. 83, PageID.479. Initially, Yiwu points out that this case involves balloon frames, not floral arches, and objects to any consideration of irrelevant facts about the wrong accused products. In defense of its infringement allegations, Yiwu cites the fact that all accused products use at least the same circular frame as the patented design. Yiwu's basic contention is that the use of the same dominating ornamental feature necessarily creates deceptive similarities in overall appearance. With respect to the patented design, Yiwu agrees that the leg shape is ornamental, but argues that the frame shape is also ornamental, and that the circular frame, moreover, dominates the overall appearance. Furthermore, Yiwu argues that, under the ordinary observer test, a proper comparison between the at-issue designs turns on the similarities in overall appearance, not differences between individual features.

In comparison to the patented design as a whole, Yiwu argues that even the accused products with a different leg shape (i.e., L-shaped legs instead of inverted T-shaped legs) are "the same" when viewed from the front and "at least substantially similar" from other views. ECF No. 34, PageID.309. And as to all others, which further use the same leg shape, Yiwu argues that the accused products are "identical" in overall appearance. ECF No. 83, PageID.477.

Having considered the arguments of the parties in light of the current record, the Court finds that the Complaint states a plausible claim of infringement. At the outset, the Court rejects the argument, made by all Moving Defendants, that the added floral elements of the purportedly at-issue floral arches preclude a finding of infringement. As Yiwu points out, this case does not involve floral arches, at least with respect to Yiwu's infringement claims against Defendants. While the D'752 Patent covers the design for a balloon frame that users can decorate to serve as a backdrop for photography or events, decorations (e.g., balloons) are not claimed as part of the patented design. Likewise, unless and until added by customers, the floral elements are not part of the accused products. As best understood by the Court, Moving Defendants describe the accused products as "complete floral arches" (or "wreaths") with reference to the images from their Amazon listings. However, it is apparent that the images simply show examples of how the accused products can be decorated. Given their intended use as backdrops, it is unsurprising that the accused

24

products are often depicted with decorations (e.g., floral clusters) on the frames. Moreover, the circular frames are not, as Moving Defendants argue, obscured and incidental. Instead, the frames (as well as the legs) are largely left exposed, presumably, for the very purpose of showing enough of the accused products for customers to understand what they are and see how they look.

Turning to the relevant infringement analysis, the Court finds that Yiwu has plausibly alleged that the accused products infringe the D'752 Patent. Consistent with Yiwu's infringement allegations, the similarities in overall appearance are apparent from simple comparisons between the patented design shown in the D'752 Patent and images of the accused products. Both parties agree not only that the accused products use (at least) the same circular frame as the balloon frame of the D'752 Patent, but also that the circular frame dominates the overall appearance of the patented design. The Complaint states a plausible claim of infringement under the ordinary observer test because the plausibility that an ordinary observer, viewing the patented design "in its entirety," *Crocs*, 598 F.3d at 1303, could be deceived into believing that the accused products are "substantially the same," *Gorham*, 81 U.S. at 528, is apparent on the face of Schedule A.

While certain Moving Defendants point out that their accused products have a different leg shape than the patented design (i.e., L-shaped legs instead of inverted T-shaped legs), the Court is not persuaded that the different leg shapes preclude a

finding of infringement. As best understood by the Court, Moving Defendants rely on their functionality theory with respect to the frame shape in the patented design to argue that a proper comparison between the at-issue designs would be focused on only the leg shapes. However, just as the patented design as a whole involves plausibly ornamental features besides a circular shape in the abstract, the accused products as a whole involve plausibly deceptive similarities despite the difference between inverted T shapes and L shapes in the abstract. As Yiwu argues, even with a different leg shape, the accused products are "the same" when viewed from the front and "at least substantially similar" from other views. ECF No. 34, PageID.309.

At bottom, Yiwu's infringement allegations are well-founded on apparent similarities between at-issue designs as a whole, and Moving Defendants have not presented a persuasive argument to the contrary. Accordingly, the Court will **DENY** Moving Defendants' Motions to Dismiss as to their request to dismiss the Complaint for failure to state a claim on the ground that Yiwu has not plausibly alleged infringement.

### B.    Fair Notice

In their Motions to Dismiss, Moving Defendants ask the Court to dismiss the Complaint under Federal Rule of Civil Procedure 8(a) for failure to give fair notice. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

26

Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotations and alteration omitted) (citing *Twombly*, 550 U.S. at 555).

With respect to Yiwu's infringement allegations, Moving Defendants argue that the Complaint relies on impermissible "group pleading" to improperly allege infringement by all Defendants "collectively." According to Moving Defendants, the Complaint lumps all Defendants together, without identifying specific allegedly infringing acts by each Defendant, or providing images to compare the patented design to each specific accused product. Moving Defendants argue that dismissal is appropriate because the Complaint is an improper "shotgun pleading" that does not give each Defendant notice of Yiwu's infringement allegations.

In opposition, Yiwu disagrees, arguing that dismissal is not appropriate because Moving Defendants are incorrect. With respect to the Complaint, Yiwu does not dispute the lack of details in the cover pleading itself. However, Yiwu argues that Moving Defendants are incorrect because Schedule A clearly delineates the allegedly infringing acts attributable to each Defendant.

The Court agrees with Yiwu. The Federal Circuit has outlined five pleading requirements that provide "enough detail to allow [an accused infringer] to answer" a claim of design patent infringement: (i) allege ownership of the asserted patent;

27

(ii) name each accused infringer; (iii) cite the patent that is allegedly infringed; (iv) state the means by which the accused infringer allegedly infringes; and (v) point to the sections of the patent law invoked. *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (quotation omitted) (citing *Phonometrics, Inc. v. Hosp. Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)). Here, in accordance with the applicable pleading requirements, the Complaint as a whole plainly gives each Defendant notice of Yiwu's infringement allegations.

Although Yiwu sets forth the same infringement allegations against all Defendants in the cover pleading itself, in Schedule A to the Complaint, Yiwu properly alleges infringement of the D'752 Patent on a defendant-by-defendant and accused product-by-accused product basis. ECF No. 5. Yiwu begins by identifying the D'752 Patent as the asserted patent, and providing selected figures of the D'752 Patent to show the patented design. *Id.*, PageID.45. In a clear, detailed, numbered table format, Yiwu then identifies each Defendant by Amazon Seller ID, company name (including d/b/a name), and address. *Id.*, PageID.46-108. For each Defendant, Yiwu identifies each accused product by ASIN (i.e., Amazon Standard Identification Number). *Id.* And for each accused product, Yiwu provides a link to the Amazon listing for the accused product, along with an image of the accused product from its Amazon listing. *Id.*

28

While Moving Defendants argue that the Complaint does not give each Defendant notice of Yiwu's infringement allegations, their argument is baseless in view of Schedule A. Accordingly, the Court will **DENY** Moving Defendants' Motions to Dismiss as to their request to dismiss the Complaint for failure to give fair notice.

### C.    Personal Jurisdiction and Jurisdictional Discovery

In their Motions to Dismiss, Moving Defendants ask the Court to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. With respect to this ground for dismissal, in opposition, Yiwu argues that the jurisdictional allegations it has set forth in the Complaint are sufficient. However, in the event the Court finds otherwise, Yiwu urges against dismissal, and asks the Court to instead allow jurisdictional discovery in aid of resolving the issue of personal jurisdiction.

Federal Rule of Civil Procedure 12(b)(2) provides that a complaint may be dismissed for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A) (providing that service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")). "The Fourteenth Amendment's Due

Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Here, Moving Defendants do not cite an applicable Michigan long-arm statue to raise an argument that Michigan has not authorized its courts to exercise personal jurisdiction. "Thus, in order to determine whether [it is] authorized to exercise jurisdiction over [Moving Defendants]," the Court must inquire "whether the exercise of jurisdiction 'comports with the limits imposed by federal due process' on the State of [Michigan]." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler*, 571 U.S. at 125).

The Federal Circuit applies its own law to the personal jurisdiction inquiry for a patent infringement claim. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). Where, as here, the parties have not conducted discovery, the plaintiff need only make a prima facie showing that the accused infringer is subject to personal jurisdiction. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).

Although there are two forms of personal jurisdiction, "general" (or "all purpose") and "specific" (or "case-linked"), Yiwu relies on only a theory of specific jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84 (quotation omitted). Based on the

30

jurisprudence of the Supreme Court, the Federal Circuit has set forth a three-part test to determine whether asserting specific jurisdiction over an out-of-state defendant comports with due process: (1) whether the defendant purposefully directed its activities to the forum State; (2) whether the plaintiff's claim arises out of or relates to those activities; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (citing *Akro*, 45 F.3d at 1545). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (holding that the defendant must have "certain minimum contacts" with the forum State "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'") (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))).

In the Complaint, Yiwu sets forth the same jurisdictional allegations against all Defendants. Generally, Yiwu cites the fact that Defendants sell the accused products through Amazon.com to allege that Defendants target United States consumers, including Michigan residents, and are amenable to shipping the accused products to Michigan residents:

> This Court may properly exercise personal jurisdiction over Defendants because Defendants targets consumers in the United States, including Michigan, by selling infringing products in their online stores. By operating

31

> these online stores, Defendants intend to do business with and solicit the business of United States citizens, and in particular, Michigan residents. Defendants, through their online stores, offers to sell infringing products into the United States and specifically, offers to ship said infringing products to Michigan. As a result of Defendants' infringing activities through their online stores in Michigan, Plaintiff has been harmed as will be addressed in this Complaint.

ECF No. 1, PageID.3 (Compl. ¶ 8).

Moving Defendants argue that dismissal is appropriate because Defendants are China-based Amazon sellers with no alleged Michigan-directed activities. With respect to Yiwu's jurisdictional allegations, Moving Defendants argue that Yiwu merely identifies generic Amazon listings and nationwide Amazon sales. Conversely, Moving Defendants argue that Yiwu does not allege any facts about Michigan-directed activities, such as advertising targeted at Michigan or revenue derived from Michigan. Moving Defendants argue that Yiwu's jurisdictional allegations are insufficient because specific jurisdiction in Michigan requires activities targeted toward Michigan, not merely the United States marketplace.

In opposition, Yiwu disagrees, arguing that dismissal is not appropriate because Yiwu has made a prima facie showing of personal jurisdiction. Yiwu argues that, in accordance with the requirements for specific jurisdiction in Michigan, Yiwu's infringement claims against Defendants arise out of alleged offers to sell and

32

sales of the accused products to Michigan residents, and there are no fairness concerns.

Having considered Yiwu's jurisdictional allegations in light of the relevant caselaw, the Court finds that Yiwu has not made a prima facie showing of personal jurisdiction on the face of the Complaint. At the same time, the Court is not inclined to dismiss the Complaint for lack of personal jurisdiction at the pleadings stage. The Court desires the benefit of a more developed record, and finds that Yiwu has therefore appropriately requested jurisdictional discovery in aid of resolving the issue. While it remains to be seen whether Yiwu will come forward with new details to make a prima facie showing, for clarity and guidance to the parties, the Court will set forth the reasons it has found that Yiwu has not yet done so below.

As best understood by the Court, in support of its argument for specific jurisdiction in Michigan, Yiwu reads the Complaint as setting forth allegations of actual sales, as well as actual offers to sell, to Michigan residents. As to "th[e] sales and offers to sell" from which "Plaintiff's claims of patent infringement arise," Yiwu cites its above jurisdictional allegations to assert that, "as alleged in the Complaint," Defendants "use Amazon.com to sell and offer for sale infringing products for purchase by and shipment to Michigan residents." ECF No. 83, PageID.480-481 (citing ECF No. 1, PageID.3 (Compl. ¶ 8)). Likewise, Yiwu cites two decisions from this Court denying motions to dismiss in purportedly analogous cases where out-of-

33

state defendants regularly made sales to Michigan customers through their own websites and/or third-party websites (i.e., eBay.com, Amazon.com, and Walmart.com). *See Ford Glob. Techs., LLC v. New World Int'l Inc.*, No. 15-cv-10394, 2017 U.S. Dist. LEXIS 72517, at *21-*22 (E.D. Mich. Apr. 24, 2017) (Michelson, J.) (finding specific jurisdiction for multiple patent infringement claims because all of them were "(at least) related to" defendant's sales of over 15,000 auto parts to Michigan customers); *FKA Distrib. Co. v. Highflyer, LLC*, No. 24-cv-11320, 2025 U.S. Dist. LEXIS 6301, at *5 (E.D. Mich. Jan. 13, 2025) (Goldsmith, J.) (finding specific jurisdiction for trademark infringement and unfair competition claims because defendant's nationwide sales allegedly included regular shipments to Michigan customers).

However, as Moving Defendants point out, and contrary to Yiwu's reading of the Complaint, Yiwu simply does not specifically allege any actual Michigan-directed activities. While Defendants sell the accused products through Amazon.com, Yiwu does not go beyond identifying generic Amazon listings and nationwide Amazon sales to allege that, like all Amazon sellers, Defendants are ready, willing, and able to ship the accused products to Michigan residents. To be sure, Yiwu suggests a reasonable likelihood of a sufficient Michigan nexus for its infringement claims. But Yiwu does not follow through. Yiwu does not, for instance, separately allege that the Amazon listings are targeted at Michigan, so as to indicate

34

actual offers to sell to Michigan residents, or separately allege that the accused products are regularly shipped to Michigan, so as to show actual sales to Michigan residents. As well, Yiwu does not point to any evidence about nationwide sales totals, so as to support a reasonable inference that such allegedly infringing acts have taken place in Michigan. Even when paraphrasing the Complaint in support of its argument to the contrary, Yiwu includes equivocal "for purchase by" and "for … shipment to" language between the phrases "sell and offer for sale" and "Michigan residents." ECF No. 83, PageID.480.

The Court finds the Federal Circuit's *NexLearn* decision, which the parties do not cite, particularly instructive on the specific jurisdiction inquiry for the at-issue China-based Amazon sellers with no specifically alleged Michigan-directed activities. In *NexLearn*, the Federal Circuit held that, standing alone, an accused infringer's operation of a website to advertise and take orders for an accused product does not render the accused infringer subject to specific jurisdiction in every forum State where residents can use the website. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378 (Fed. Cir. 2017).

The Federal Circuit evaluated the out-of-state accused infringer's interactive website "as [it] would any other contact under a specific jurisdiction theory." *Id.* In the absence of evidence that the website "facilitated the making, using, offering, or selling of [the accused product] in [the forum State]," the Federal Circuit found the

35

website "conceptually no different than operating an out-of-state store." *Id.* at 1378-79. "That a store would accept payment from a hypothetical out-of-state resident and ship its product there does not create a substantial connection for an infringement claim between the store and the hypothetical resident's forum State." *Id.* at 1379. "Something more is needed—whether it be actual sales, targeted advertising, or contractual relationships—to connect the defendant's infringing acts of making, using, offering, or selling its product with the forum State." *Id.* "What is sufficient may vary from case to case," the Federal Circuit instructed, "but it cannot be that the mere existence of an interactive website, like the existence of an out-of-state store, is 'suit-related conduct … creat[ing] a substantial connection with the forum State.'" *Id.* (quoting *Walden*, 571 U.S. at 284).

In accordance with these principles, the Court finds that, on the face of the Complaint, Yiwu has not made a prima facie showing that Moving Defendants are subject to specific jurisdiction in Michigan. "The law is well-settled that simply being an online seller on Amazon isn't enough." *In re "Schedule A" Cases*, No. 25-cv-927, 2025 U.S. Dist. LEXIS 130856, at *4 (W.D. Pa. July 10, 2025). "While a [Michigan] resident *could* purchase [the accused products] from [Amazon.com], what is missing is any evidence that such a sale has taken place." *NexLearn*, 859 F.3d at 1378. Indeed, "[Yiwu] does not even allege that any [Michigan] resident has accessed [the Amazon listings for the accused products]." *Id.* As instructed by the

36

Federal Circuit, the Court finds that, standing alone, the Amazon listings "create only an 'attenuated affiliation' with [Michigan] as opposed to a 'substantial connection' with the forum State as required for specific jurisdiction." *Id.* at 1381 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 & n.18 (1985)).

Having found that Yiwu has not yet made a prima facie showing of personal jurisdiction, the Court will now consider Yiwu's request for jurisdictional discovery. In their Motions to Dismiss, Moving Defendants challenge the sufficiency of Yiwu's jurisdictional allegations in an effort to obtain early dismissal. Yiwu urges against dismissal, and asks the Court to instead give Yiwu the opportunity to take jurisdictional discovery in aid of resolving the issue of personal jurisdiction. Moving Defendants, by silence in their reply briefs, do not oppose Yiwu's request.

The Court is not inclined to dismiss the Complaint for lack of personal jurisdiction at the pleadings stage, given Yiwu's unopposed request for jurisdictional discovery. The Court desires a more developed record. Notably, while Moving Defendants point out the absence of Michigan-specific infringement allegations in the Complaint, Moving Defendants do not separately deny that discovery on their acknowledged nationwide sales through Amazon.com would provide evidence of a sufficient Michigan nexus for Yiwu's infringement claims (e.g., sales to Michigan residents) to support the assertion of specific jurisdiction. Accordingly, pursuant to Yiwu's unopposed request for jurisdictional discovery, the Court will **DENY**

Moving Defendants' Motions to Dismiss as to their request to dismiss the Complaint for lack of personal jurisdiction **WITHOUT PREJUDICE** pending the completion of jurisdictional discovery.

In the absence of any discussion by the parties on the procedural aspects, the Court anticipates that the parties and the Court can handle the issue of personal jurisdiction in parallel with other pre-trial proceedings. Generally, the Court expects that the parties will complete jurisdictional discovery within a reasonable time after entry of a scheduling order, but no later than the close of fact discovery. To the extent new details do not force a concession one way or the other, the Court expects that the parties will submit the issue of personal jurisdiction to the Court for resolution within a reasonable time following the completion of jurisdictional discovery, but no later than the filing of dispositive motions. In accordance with Federal Rule of Civil Procedure 26(f), the Court hereby **ORDERS** that the parties shall discuss these topics at their discovery conference and submit their specific proposals on at least the following procedural aspects in their proposed discovery plan: (1) the scope and timing of jurisdictional discovery, including any provisions for obtaining discovery from third parties (e.g., Amazon); and (2) the time by which Moving Defendants will file any renewed motions raising a defense of lack of personal jurisdiction.

### D.      Joinder and Severance

In their Motions to Dismiss, certain Moving Defendants additionally ask the Court to dismiss the Complaint for misjoinder in violation of 35 U.S.C. § 299, or alternatively sever them from this case under Federal Rule of Civil Procedure 21 to avoid prejudice and judicial inefficiencies.[4]

Federal Rule of Civil Procedure 20 normally governs permissive joinder of parties. In patent cases, joinder of multiple accused infringers as defendants is governed by the more stringent joinder provision codified at 35 U.S.C. § 299 by the passage of the Leahy-Smith America Invents Act (AIA). Section 299 of the Patent Act generally tracks the language of Rule 20 in imposing the two requirements that the plaintiff's infringement claims against all accused infringers (1) must be asserted in connection with the same transaction or occurrence and (2) will raise common questions of fact. Fed. R. Civ. P. 20(a)(2)(A)-(B). The patent-specific joinder provision further requires that the transaction or occurrence must be related to acts of infringement involving the same accused product:

> (a) JOINDER OF ACCUSED INFRINGERS.—
> With respect to any civil action arising under any Act of
> Congress relating to patents, other than an action or trial
> in which an act of infringement under section 271(e)(2)

---

[4] This ground for dismissal (or alternatively severance) is asserted by Defendants HEOMU (Schedule A Def. No. 1) and EGU-KING (Schedule A Def. No. 13), whose Motion to Dismiss was filed at ECF No. 76, and by Defendants Vanda FDT (Schedule A Def. No. 7) and QSN Namtso (Schedule A Def. No. 11), whose Motion to Dismiss was filed at ECF No. 81.

has been pled, parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if—

(1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

(2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a)(1)-(2). In imposing the sameness requirement, Section 299 expressly prohibits joinder of multiple accused infringers "based solely on allegations that they each have infringed the patent or patents in suit." *Id.* § 299(b).

Moving Defendants argue that joinder is not appropriate because Defendants are "unrelated" and sell "distinct" accused products from "different" sources. ECF No. 81, PageID.434. With respect to Yiwu's joinder allegations, Moving Defendants argue that Yiwu does not allege any facts showing that the joinder requirements of Section 299 are satisfied. According to Moving Defendants, Yiwu's joinder allegations are "broad" and "conclusory," and do not show enough "connectivity" among Defendants or sufficient "commonality" between the accused products. *Id.*, PageID.439. Rather, Moving Defendants argue that Yiwu's joinder allegations merely show a "similar pattern" of infringement of the D'752 Patent by Defendants with "similar" names and addresses. *Id.* In other words, "the Complaint boils down

40

to a claim that Defendants infringed on Plaintiff's Patent in the same way." *Id.*, PageID.440.

In opposition, Yiwu argues that joinder is appropriate because Moving Defendants "are part of the larger group of Defendants who all sell balloon frames with suspiciously near-identical designs and who, as a whole, appear to be acting in concert." ECF No. 83, PageID.483. With respect to the joinder requirements of Section 299, Yiwu argues that it has satisfied the transaction-or-occurrence prong by alleging concerted action. Moreover, Yiwu argues that it has satisfied the sameness requirement by alleging that the designs of the accused products are nearly identical. Specifically, Yiwu argues that the sameness requirement is satisfied because "the accused products or processes are the same in respects relevant to the patent." *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012). As well, Yiwu argues that, by extension, the common question prong is satisfied because the questions of claim construction, infringement, and validity in this case will be common to all Defendants.

Accepting Yiwu's joinder allegations as true and construing the Complaint in the light most favorable to Yiwu, the Court finds that joinder of Moving Defendants is appropriate. In the Complaint, Yiwu alleges that Defendants comprise a group of China-based Amazon sellers who "are engaging in a systematic approach of establishing online stores" to sell "the same or nearly identical accused products."

ECF No. 1, PageID.4 (Compl. ¶¶ 10-11). Yiwu explains that China-based Amazon sellers "are not subject to any effective verification process" and that "it is virtually impossible, or at least very difficult, for Plaintiff to determine the true identity of Defendants." *Id.*, PageID.2 (Compl. ¶ 3). As part of the systematic approach, Yiwu alleges that, although they "purport to be different companies," Defendants "are acting in concert if not directly, at least by obtaining the infringing products from a common source or related sources, or engaging in the infringing activities at the suggestion or direction of a common source or related sources." *Id.*, PageID.4-5 (Compl. ¶¶ 11-13, 15-16). For instance, Yiwu explains that some Defendants not only "sell identical or nearly identical products," but also "use identical or nearly identical photographs/marketing materials" in their Amazon listings. *Id.*, PageID.5 (Compl. ¶ 16). Furthermore, Yiwu offers specific examples of sets of Defendants who variously "list nearly the same addresses," "have similar names and list their location as two buildings at the same address," and "use what appears to be the same product photograph" in their Amazon listings. *Id.*, PageID.4-5 (Compl. ¶¶ 12-13, 15).

In sum, Yiwu alleges that dozens of purportedly different China-based companies all suddenly started using Amazon.com to anonymously sell virtual copies of popular and hitherto unique Yiwu balloon frames covered by the D'752 Patent. In filing this case, Yiwu has joined a multitude of plaintiffs alleging the same

systematic approach by online sellers from China to capitalize on their success while shielding themselves from potential liability. In the context of China-based Amazon sellers, Yiwu's joinder allegations are not too conclusory for the Court to accept as true that Defendants and their sources are engaged in concerted action to mass-produce the accused products and undersell Yiwu in the United States marketplace. *Cf. Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

While Moving Defendants argue that Yiwu has improperly joined them and other Defendants in violation of Section 299, the Court is not persuaded by their argument for two reasons. First, Moving Defendants do not identify any support for their attorney argument that Defendants are "unrelated," or that Defendants sell "distinct" accused products from "different" sources. ECF No. 81, PageID.434. Second, with respect to the joinder requirements of Section 299, Moving Defendants do not rebut Yiwu's argument that the transaction-or-occurrence prong and the sameness requirement are satisfied by Yiwu's allegations of concerted action among Defendants and nearly identical designs between the accused products. Although Moving Defendants argue that Yiwu does not allege any facts showing that its infringement claims against all Defendants "arise out of the same transaction, occurrence, or series of transactions or occurrences related to the use, import, or sale

43

of the same accused product," *id.*, PageID.440, they do so only after recasting Yiwu's joinder allegations as merely showing a "similar pattern" of infringement, *id.*, PageID.439.

Based on Yiwu's well-pleaded allegations of concerted action among Defendants and nearly identical designs between the accused products, and in the absence any well-supported argument to the contrary, the Court finds that Yiwu has satisfied the applicable joinder requirements, and that joinder is therefore appropriate. Accordingly, the Court will **DENY** Moving Defendants' Motions to Dismiss as to their request to dismiss the Complaint for misjoinder.

In the alternative to dismissing the Complaint for misjoinder in violation of 35 U.S.C. § 299, Moving Defendants ask the Court to sever them from this case under Federal Rule of Civil Procedure 21. While expressly instructing that misjoinder "is not a ground for dismissing an action," Federal Rule of Civil Procedure 21 provides that a district court "may at any time, on just terms, add or drop a party" and "may also sever any claim against a party." Fed. R. Civ. P. 21. Without further elaboration, Moving Defendants argue that severance is appropriate "to avoid prejudice and promote judicial efficiency." ECF No. 81, PageID.434. In the absence of any statement of the particular grounds upon which they assert prejudice and judicial inefficiencies resulting from joinder, the Court will **DENY**

44

Moving Defendants' Motions to Dismiss as to their request for severance from this case **WITHOUT PREJUDICE** to filing a properly supported motion for severance.

## V.    CONCLUSION

For the reasons stated in this Opinion and Order, the Court **DENIES** Moving Defendants' Motions to Dismiss. Within 21 days of this Opinion and Order, the Parties shall conduct a discovery conference and submit a proposed discovery plan pursuant 26(f) of the Federal Rules of Civil Procedure.

**SO ORDERED.**


Dated: May 19, 2026                      s/F. Kay Behm
                                                F. Kay Behm
                                                United States District Judge